UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X

DERRICK BELL,                                                :        05 CV 0663 (ARR)
                                                             :
                              Petitioner,                    :        NOT FOR
                                                             :        ELECTRONIC OR PRINT
       -against-                                             :        PUBLICATION
                                                             :
DAVID L. MILLER, Superintendent of Eastern                   :        OPINION AND ORDER
Correctional Facility, ELIOT SPITZER, Attorney General       :
of New York, and RAYMOND CUNNINGHAM,                         :
Superintendent of Woodbourne Correctional Facility           :
                                                             :
                              Respondent.                    :
                                                             :
-------------------------------------------------------------------- X

ROSS, United States District Judge:

       Pursuant to 28 U.S.C. § 2254, petitioner Derrick Bell filed the instant habeas petition

challenging his conviction on January 26, 2005. Petitioner contends that he was deprived of

effective assistance of counsel because (1) trial counsel failed to consult a medical expert

concerning the unreliability of the complaining witness's identification; (2) trial counsel failed to

introduce into evidence statements in a police report contradicting the complaining witness's

identification testimony; (3) trial counsel failed to object to the introduction of inadmissible,

highly prejudicial and non-probative evidence; (4) trial counsel failed to exercise a peremptory

strike; and (5) trial counsel failed to make an adequate motion to dismiss the charge of robbery.

Petitioner also contends that his robbery conviction was based on insufficient evidence. For the

reasons set forth below, the petition is denied.

1

By motion dated February 7, 2005, petitioner moved to amend the caption of his petition to identify respondent John Doe as Raymond Cunningham, Superintendent of Woodbourne Correctional Facility. That motion is granted. Petitioner's motion for release on recognizance or surety pending the disposition of his petition for habeas corpus, dated June 2, 2005, is denied as moot.

## BACKGROUND

At approximately 2:30am on July 16, 1996, Brentonol Moriah was walking home from work along Jefferson Avenue in Brooklyn. Tr. 381, 348.[1] He felt something hard press against his shoulder and heard a voice demand money. Tr. 379. Moriah, stating that he did not have any money, removed an address book from his pants pocket, and placed it on the hood of a parked car. Id. Mr. Moriah turned to face his assailant, and stood "face to face" with his assailant for "about five minutes," Tr. 419, begging his assailant not to shoot him, during which time his assailant had a shotgun pointed at Moriah's leg. Tr. 380, 382. The assailant then shot Moriah in the leg and fled. Tr. 383-84. Shortly after the assailant fled, Police Officers Patrick Perente and Salvatore Kopita responded to the scene. Tr. 515, 662. Officer Perente asked Mr. Moriah what happened, and Mr. Moriah told him that somebody tried to rob him and shot him in the thigh. Tr. 663. Mr. Moriah described the assailant as "a male black, wearing a lemon-colored shirt." Id. Mr. Moriah did not name the assailant and did not tell Officer Perente that he knew the individual.

Mr. Moriah was transported to Kings County Hospital and underwent surgery. Tr. 438. He remained in intensive care for roughly eleven days, during which time he was on a respirator

---

[1]Citation to "Tr." indicates the Trial Transcript.

and sedated in a semi-conscious state. Moriah regained consciousness on or about July 27, 1996. Detective Robert Figueroa interviewed Moriah the next day, at which time Moriah identified his assailant as Derrick Bell, a former neighbor with whom he had shared a kitchen and bathroom for almost a year. Hearing Tr. 7; Tr. 440. Moriah did not remember speaking to officers at the scene and did not recall giving a description of his assailant to police at the scene. Tr. 438. Petitioner was arrested on August 14, 1996, based on Moriah's identification.

Petitioner was tried before a jury and convicted of Robbery in the First Degree (N.Y. Penal Law § 160.15(1)) and Assault in the Second Degree. On May 27, 1997, petitioner was sentenced to concurrent prison terms of twelve and one-half years to twenty-five years on the robbery count, and three and one-half years to seven years on the assault count.

Petitioner appealed to the Appellate Division, Second Department. On appeal, petitioner raised five claims: (1) the trial court erroneously admitted prejudicial evidence; (2) the trial court erroneously refused to allow defense counsel to peremptorily challenge a prospective juror; (3) the evidence of robbery was legally insufficient and against the weight of the evidence; (4) petitioner was denied effective assistance of counsel; and (5) the sentence was harsh and excessive. In support of his ineffective assistance of counsel claim, petitioner argued specifically that: (a) counsel failed to object to the introduction of certain prejudicial evidence; (b) counsel failed to offer into evidence a police report indicating that the assailant was unknown; (c) counsel failed to make an adequate motion to dismiss the robbery charge; and (d) counsel failed to properly exercise a peremptory challenge against a prospective juror. The Appellate Division rejected all of petitioner's claims on the merits and affirmed the judgment. People v. Bell, 298

A.D.2d 398, 751 N.Y.S.2d 402 (2d Dep't 2002). The Court of Appeals denied leave to appeal on December 11, 2002. People v. Bell, 99 N.Y.2d 555, 754 N.Y.S.2d 207 (2002).

Petitioner filed a motion to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10. In his motion, petitioner raised a claim of ineffective assistance of trial counsel based on four grounds: (1) counsel failed to consult a medical expert regarding the reliability of the complainant's identification of petitioner; (2) counsel failed to offer into evidence a police report indicating that the assailant was unknown; (3) counsel failed to object to certain prejudicial evidence; and (4) counsel failed to properly exercise a peremptory challenge against a prospective juror. In an opinion dated October 4, 2004, the court denied petitioner's 440 motion. The court found the claim based on counsel's failure to consult a medical expert procedurally barred under New York Criminal Procedure Law § 440.10(2)(c). The court found that sufficient facts appeared on the record to have permitted petitioner to raise the claim on his direct appeal, but that petitioner unjustifiably failed to do so. The court then stated that even "if the merits were reached, the result would be the same." The court found defendant's remaining claims procedurally barred under New York Criminal Procedure Law § 440.10(2)(a) because those claims had been denied on the merits by the Appellate Division on petitioner's direct appeal. The 440 court did not address the merits of those claims. Petitioner's application to the Appellate Division for leave to appeal the order denying his motion to vacate his conviction was denied on January 12, 2005. This petition timely followed.

# DISCUSSION

1. <u>Standard of Review</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court "(1) arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or (2) decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413. A decision is deemed an "unreasonable application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [a] prisoner's case." <u>Id.</u> "Under the latter standard, 'a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or

5

incorrectly. Rather, that application must also be unreasonable.'" Gilchrist v. O'Keefe, 260 F.3d 87, 93 (2d Cir. 2001) (quoting Williams, 529 U.S. at 411). The Second Circuit has added, however, that although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Frances S. v. Stone, 221 F.3d 100, 111 (2000) (internal quotation marks and citations omitted). Under AEDPA, a federal court must defer to the state court's findings of fact, which are "presumed to be correct." 28 U.S.C. § 2254(e). "The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Id.

2.    Petitioner's Ineffective Assistance of Trial Counsel Claims

It is settled law that ineffective assistance of counsel claims are evaluated under the two-prong standard promulgated by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): A defendant must show that counsel's representation "fell below an objective standard of reasonableness" based on "prevailing professional norms," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 688, 694. Strickland defined a "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." Id. at 694.

Before enactment of AEDPA, federal courts reviewed all ineffective assistance claims de novo. As noted above, however, AEDPA amended the law to mandate deference to state court decisions that adjudicated a petitioner's claim on the merits. 28 U.S.C. § 2254(d). A state court decision is an "adjudication on the merits" requiring application of the deferential AEDPA standard of review even when it does not explicitly refer to the federal claim or discuss the

6

reasoning for its decision, as long as it finally resolves a party's claim and is based on the substance of the claim advanced, rather than on a procedural ground. Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001).

Under AEDPA, a state habeas petitioner claiming ineffective assistance of counsel must show that the state court "applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 698-99 (2002); Aparicio v. Artuz, 269 F.3d 78, 99 (2d Cir. 2001) ("Under AEDPA we inquire only whether the Appellate Division's rejection of this claim amounted to an unreasonable application of Strickland.").

Here, the Appellate Division denied petitioner's four ineffective assistance of counsel claims raised before it on the merits, finding, "[a]fter review of the record in its entirety, and without giving undue significance to retrospective analysis, we are satisfied that the defendant received the effective assistance of counsel." People v. Bell, 298 A.D.2d 398, 751 N.Y.S.2d at 401 (2d Dep't 2002). Thus, under Sellan, because the state court relied on substantive, rather than procedural, grounds to decide petitioner's appeal, this holding is an adjudication on the merits and should not be overturned unless it was an "unreasonable application of clearly established Federal law." 28 U.S.C. § 2254(d)(1).

###### A. Failure To Consult Expert Witness Regarding the Reliability of Identification Testimony

Petitioner's fifth ineffective assistance of counsel claim – that counsel was ineffective for failing to consult with an expert witness regarding the validity of Mr. Moriah's identification testimony – was first raised in a motion to vacate the judgment under C.P.L. § 440.10. The motion court found that because this issue could have been raised on direct appeal it was

7

procedurally defaulted. The judge further observed that even "if the merits were reached, the result would be the same." and explained the reasons for this conclusion. Resp. Ex. M. at 6-7.

The government asserts that this claim is procedurally barred due to the reliance by the 440 court on an independent and adequate state ground, namely petitioner's failure to raise this issue on direct appeal. In reply, petitioner contends that the claim was not procedurally barred under New York Criminal Procedure Law § 440.10(2)(c) "because that statute is not invoked in all similar cases, i.e., in cases where ineffective assistance of counsel claims rest on matters outside the record." Pet. Reply at 4. In other words, petitioner alleges that the state court's reliance on a procedural default was incorrect, and that this court should not deem this incorrect decision an adequate state ground.

A federal court may not review a federal question on habeas review if the state court's "decision rests upon adequate and independent state grounds." Harris v. Reed, 489 U.S. 255, 261 (1989) (citations and internal quotation marks omitted). If a state court holding contains a plain statement that a claim is procedurally barred, then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. Id. at 264 n.10. The adequacy of an alleged state procedural bar, however, is itself a question of federal law, Lee v. Kemna, 534 U.S. 362, 375, 122 S.Ct. 877, 151 L.Ed. 820 (2002); Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999), and "a [state] procedural bar will be deemed 'adequate' only if it is based on a rule that is 'firmly established and regularly followed by the state in question." Garcia, 188 F.3d at 77 (quoting Ford v. Georgia, 498 U.S. 411, 423-24, 111 S.Ct. 850, 112 L.Ed.2d 9358 (1991)).

Here, in denying petitioner's 440 motion, the New York State Supreme Court held that because counsel's failure to consult an expert witness could have been raised on direct appeal, the claim was procedurally defaulted. The court cited CPL § 440.10(2)(c), which provides that a court "must deny" a 440 motion upon a defendant's "unjustifiable failure to raise [on direct appeal] such ground or issue," with respect to which "sufficient facts appear on the record of the proceedings." Applying this procedural rule, the court declined to consider this claim on the merits.

However, as petitioner asserts CPL § 440.10(2)(c) is not regularly followed in the context of ineffective assistance claims. See Bonilla v. Portuondo, No. 00 Civ. 2369, 2004 WL 350694, at *10 (S.D.N.Y. Feb. 26, 2004) (collecting cases). "In general, post-judgment attacks on trial counsel's performance should therefore be made by a motion pursuant to N.Y.Crim. Proc. Law § 440.10." Lopez v. Greiner, 323 F.Supp.2d 456, 466 (S.D.N.Y. 2004); see People v. Brown, 45 N.Y.2d 852, 853-54, 410 N.Y.S.2d 287, 287 (1978) ("Generally, the ineffectiveness of counsel is not demonstrable on the main record, . . . it would be better, and in some cases essential, that an appellate attack on the effectiveness of counsel be bottomed on an evidentiary exploration by collateral or post-conviction proceedings brought under CPL § 440.10."); People v. Brown, 28 N.Y.2d 282, 287, 321 N.Y.S.2d 573, 270 N.E.2d 302 (1971) (determination of ineffective assistance generally does "not lie within the compass of appellate review by a court limited to properly preserved questions of law"). This is especially sensible in the instant case, where petitioner's 440 motion relied upon extrinsic evidence to argue that consultation with an expert witness regarding the identification testimony was reasonably expected, and that failure to do so prejudiced petitioner. In fact, in the instant case, it was not possible to determine whether expert

9

testimony was even available without consulting such an expert to opine on whether the identification testimony was tainted by the complainant's medical condition. The claim is therefore not procedurally barred from habeas review.

Because the state court expressly ruled on the merits, however, the claim is properly reviewed under the AEDPA standard. Petitioner argues that his claim should be reviewed <u>de novo</u> because "[s]uch dicta couched in conditional, subjunctive language – even where it appears to touch on the merits of an issue – is not considered 'an adjudication on the merits.'" Pet. Mem. Law at 70. In support of this argument, petitioner cites <u>Harris v. Reed</u>, 489 U.S. 255, 264 n.10 (1989) and <u>Garcia v. Lewis</u>, 188 F.3d 71, 77-82 (2d Cir. 1999). Neither of these cases, however, compels <u>de novo</u> review in the instant case. In those cases, the Supreme Court and Second Circuit, respectively, explained that federal courts are required to honor a state court's decision based on independent and adequate state grounds, even where the state court reaches the merits of a federal claim in an alternative holding. Such a requirement has no bearing in the instant case, where the state court did not base its holding on an adequate state grounds. Moreover, contrary to petitioner's assertion, the 440 court did not merely conclusorily state that "the result would be the same if the merits were reached," but instead provided a full analysis of the merits. Neither the parties nor the court located authority suggesting the propriety of invoking the <u>de novo</u> standard of review here. Where, as here, the state court has not based its holding on an independent and adequate state grounds, and has additionally ruled on the merits, there is no reasoned basis to ignore the state court's substantive ruling. The court accordingly concludes that AEDPA's more deferential standard applies.

In any event, even reviewing this claim de novo as petitioner urges, the claim fails, as petitioner cannot satisfy the Strickland standard. Petitioner has established neither that his counsel's behavior "fell below an objective standard of reasonableness" based on "prevailing professional norms" nor that he was prejudiced by any alleged error by counsel. Petitioner argues that his trial counsel, Mr. Kaplan, was ineffective because he failed to consult an expert witness regarding the reliability of Mr. Moriah's identification. Petitioner asserts that "[a]t trial, the only evidence connecting Mr. Bell to [the crimes at issue] was Mr. Moriah's identification testimony." Mem. L. Supp. Pet. at 2. Due to a number of factors, petitioner asserts, a reasonably competent attorney would have conducted such an investigation. Id. at 3. Specifically, petitioner points to the following factors as compelling consultation with an expert:

> Mr. Moriah said that he knew his assailant as his former neighbor with whom he had shared a kitchen and bath and that he stood face to face with his assailant for a full five minutes during the incident. Yet, Mr. Moriah failed to identify Mr. Bell as his assailant at the scene of the crime. Second, Mr. Moriah testified by videotape before the Grand Jury several weeks after the crime occurred that he continued to experience memory lapses. Third, Mr. Moriah testified at the pre-trial hearing that he did not recall talking to the police at the scene of the crime. Fourth, Mr. Moriah lost over half of his blood as a result of the gun shot, lost consciousness and was deeply sedated on narcotics and amnestic drugs for more than 10 days before regaining consciousness. He only identified Mr. Bell as his assailant shortly after emerging from unconsciousness.

Pet. Mem. at 3.

Petitioner has established no standard of practice requiring trial counsel to consult an expert regarding potential memory loss leading to unreliable eyewitness testimony. Petitioner's reliance on child sexual abuse prosecutions is misplaced. In those cases, trial counsel was deemed ineffective for failing to consult medical experts in order to counter the prosecution's

11

expert testimony regarding physical conditions indicative of sexual abuse.  See Pavel v. Hollins, 261 F.3d 210 (2d Cir. 2001) (pre-AEDPA); Lindstadt v. Keane, 239 F.3d 191 (2d Cir. 2001); Gersten v. Senkowski, 299 F.Supp.2d 84 (E.D.N.Y. 2004); Miller v. Senkowski, 268 F.Supp.2d 296 (E.D.N.Y. 2003).  In Gersten, Judge Weinstein noted the special circumstances provided by child sex abuse cases.  Gersten, 299 F.Supp.2d at 101.  He explained that while "[t]here is no per se rule that requires trial attorneys to seek out an expert," as the Lindstadt court had pointed out, "it is difficult to imagine a child abuse case . . . where the defense would not be aided by the assistance of an expert."  Id.  (Citation and internal quotation marks omitted).  Judge Weinstein quoted Eze v. Senkowski, 321 F.3d 110, 128 (2d Cir. 2003), in which the court found that in child sexual abuse cases, defense counsel needs, "at a minimum, to consult with an expert to become educated about the 'vagaries of abuse indicia.'" Id. (internal quotation marks omitted).  As is evident from the above discussion, courts view child sexual abuse cases as unique, requiring heightened diligence on the part of defense counsel.

The final case relied on by petitioner is plainly inapposite.  In that case, Thomas v. Kuhlman, 255 F.Supp.2d 99 (E.D.N.Y. 2003), counsel's assistance was deemed ineffective because he failed to investigate the crime scene.  Instead, where a witness testified that she saw defendant standing on a fire escape outside the victim's apartment window shortly before the victim was killed, the court found that investigation of the crime scene would have revealed that it would have been physically impossible for the witness to have seen anybody at the victim's window because that window was not visible from the witness's vantage point.  Counsel was therefore ineffective for failing to investigate.  The testimony of an expert was not at issue.

Petitioner has presented no authority establishing the existence in 1997 of a professional standard requiring consultation with an expert regarding the reliability of a witness's identification. Nor has the court located such authority. Even assuming, however, that a reasonably competent attorney presented with these facts would have consulted a medical expert, petitioner has not shown that "but for" his lawyer's failure to do to so, the outcome of the trial would have differed.

Contrary to petitioner's argument, the affidavit upon which he relies, from neuropsychologist Dr. Elkhonon Goldberg, is insufficient to undermine confidence in the verdict. Dr. Goldberg's conclusions are attenuated and speculative, and, in fact, internally inconsistent.[2]

Dr. Goldberg concludes that Moriah's identification of Bell as his assailant is unreliable. However, he fails to provide sufficient explanation for this conclusion. Based on his inability to recall his conversation with police immediately following the shooting, Dr. Goldberg concludes that Moriah suffered from retrograde amnesia for the events predating the loss of consciousness. Goldberg Aff. ¶ 4. Although he opines that the amnesia "may very well have affected" Mr. Moriah's memories of the assault itself, id. ¶ 6, Dr. Goldberg provides no explanation as to why loss of memory regarding his conversation with police indicates an inability to identify his

---

[2]The court also notes that Dr. Goldberg never treated or examined petitioner before reaching his conclusions. Nor did Dr. Goldberg review hospital records regarding petitioner's treatment. Although the District Attorney evidently lost petitioner's hospital records, petitioner did not respond to the 440 court's concern that neither party attempted to obtain the records directly from the hospital.

assailant, relying only on the fact that the time between the shooting and these conversations was "relatively brief."[3] Id.

Dr. Goldberg explains that retrograde amnesia can last from a few minutes to a period of years or decades, id. ¶ 5, and indicates that the duration of Moriah's amnesia is impossible to establish. Id. ¶ 6. The doctor then asserts that Moriah's amnesia would have gotten worse between his interview with the police and the time he awoke from his coma, concluding that Moriah's failure to identify Bell immediately after the incident is more reliable than his subsequent identification. Id. Dr. Goldberg's conclusion, however, is unsupported by scientific analysis and, in fact, internally contradictory. Having stated that retrograde amnesia may last only a few minutes in some cases, the doctor concludes, without explanation, that Moriah's amnesia must have worsened between the night of the incident and the identification of Bell as the perpetrator. Id. Based on his prior statements, it seems just as likely that the amnesia abated and his memory returned in the intervening period.

Dr. Goldberg also opines that Moriah's identification of Bell as the assailant was based on a false memory. "False memories, once formed," he states, "are often very persistent." Id. ¶ 9. He has not indicated, however, that retrograde amnesia contributes to false memories, but rather that amnesia diminishes a patient's ability to recall information acquired before the onset of brain dysfunction. The doctor offers no explanation as to why Moriah identified Bell when he

---

[3]Although Dr. Goldberg explains that because of blood loss resulting from the gunshot wound, Moriah likely suffered from brain dysfunction, he does not indicate when such brain dysfunction occurred. Accordingly, it is impossible to determine the accuracy of his statement that Moriah had conversations with the police "before the onset of brain dysfunction," id. ¶ 6, and whether his memory of his assailant's identity would likely be affected in the same manner as his memory of those conversations.

awoke from his coma or why this identification is consistent with persistent retrograde amnesia, which one would think would have prevented Moriah from recalling anything about the assault, rather than with a recovery from that amnesia during the period of time between the assault and his identification of Bell. Finally, with regard to medications received by Moriah during his treatment, Dr. Goldberg opines, based on limited knowledge of the type and amount of medications administered, only that their administration was a "possible source[]" of memory degradation. Id. ¶ 7.

In sum, Dr. Goldberg's equivocal opinions, based upon neither examination of petitioner nor even review of his treatment records, is insufficient to establish that, but for counsel's failure to call such an expert, the outcome of the trial would have differed. Accordingly, petitioner's claim fails under the prejudice prong of Strickland.[4]

Moreover, although he did not offer expert testimony regarding the validity of the witness's identification, trial counsel effectively argued that the witness's two differing identifications called into question his reliability. In his opening statement, trial counsel noted that, although he allegedly stared the perpetrator in the eyes for five minutes during the robbery and even though he had lived with Bell for a year and therefore knew him well, the only identification petitioner gave to police officers at the scene was that the perpetrator was "a male black, wearing a lemon yellow shirt." Tr. at 190. He noted that "for almost a two-week period, Brenton [Moriah] never said anything about Derrick Bell," id., and that "only upon speaking to

---

[4]Contrary to petitioner's assertion, trial counsel's failure to consult an expert witness is not made prejudicial as a result of the motion court's refusal to consider polygraph evidence allegedly exculpating petitioner.

Detective Figueroa [eleven days later] does Brenton [Moriah] change the identification of the individual . . ." Id. at 193.

On summation, trial counsel also argued that Moriah clearly remained confused while in the hospital and also while on the witness stand, calling into question the reliability of his identification of petitioner eleven days after the shooting. He contended that Moriah remained confused as to whether or not his cousins visited him in the hospital during the eleven day period, he didn't remember his testimony at a hearing a month earlier, and that "[e]ven on the stand he exhibited to you his confusion." Tr. at 891.

It is clear from the record that trial counsel effectively argued that Moriah's identification of Derrick Bell as the perpetrator was questionable in light of his prior failure to identify Bell by name. The jury heard testimony about petitioner's physical state during the intervening period and was able to draw its own conclusion as to the reliability of the identification. Although habeas counsel, had they represented petitioner at trial, may have chosen to consult an expert witness and attempted to submit medical evidence to bolster the claim that the identification was unreliable, petitioner has failed to show that trial counsel's failure to do so constituted ineffective assistance.

Because petitioner has not satisfied the Strickland standard, petitioner's claim fails under de novo review. Accordingly, the 440 court's rejection of this claim cannot be deemed objectively unreasonable, and the claim also fails under the more deferential AEDPA standard. The 440 court rejected this claim, finding that in the circumstances present, "it can hardly be said that counsel failed to provide meaningful representation." Resp. Ex. M at 7. The court explained that "[t]he psychologist's conclusion was not supported by an examination, testing or observation

16

of complainant . . . and the premises relied upon by him are fraught with hedge words and the only firm conclusion – based on the failure of complainant to recall talking to the police officer just before complainant lost consciousness – was retrograde amnesia as to that conversation." Id. Further, the court explained, the expert "does not suggest any reason why, if one had amnesia as to the identity of an assailant, he would create and rely upon a false memory of the culprit." Id. Finally, the court stated that "in 1997 at the time of trial, it was not at all clear that expert testimony was admissible in connection with the sort of single witness identification issue presented here." Id. Under AEDPA, a state habeas petitioner claiming ineffective assistance of counsel must show that the state court "applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 698-99 (2002). As discussed above, this court agrees that petitioner has failed to establish ineffective assistance of counsel under Strickland. Accordingly, the court cannot find the state court's conclusion to result from an unreasonable application of clearly established federal law.

### B. Failure to Introduce Police Report Into Evidence

Petitioner next claims that trial counsel was ineffective for failing to impeach Moriah's testimony with evidence of a prior inconsistent statement. Specifically, petitioner contends that the statement Moriah gave to Officer Perente, identifying his assailant as a black man in a lemon-yellow shirt, was inconsistent with his subsequent statement to Detective Figueroa and his trial testimony naming petitioner. Petitioner contends that the police report recording this inconsistent statement should have been admitted to prove that Mr. Moriah made inconsistent statements. In response, the government argues: (1) the statement given to Detective Perente was not inconsistent with Mr. Moriah's later identification of petitioner; (2) trial counsel met any

obligation he had to use the statement to impeach Moriah; and (3) the police report was inadmissible. Even assuming, arguendo, that the police report was admissible, petitioner has established no prejudice resulting from counsel's failure to introduce the report. See Strickland v. Washington, 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.")

Trial counsel called Officer Perente as a defense witness and elicited from him the fact that Moriah initially identified his assailant to the police only as a black male wearing a lemon-colored shirt. Officer Perente testified unequivocally that Moriah neither identified his assailant by name nor stated that he knew the individual who had robbed and shot him. Tr. at 662-63, 669-70. There was no contradictory evidence regarding this initial identification.

Trial counsel elicited Moriah's initial identification of his assailant in the most effective way possible – through the direct testimony of the police officer to whom the identification was made. There is absolutely no reason to conclude that it would have been more effective to introduce the police report rather than eliciting the statement directly from the officer. Certainly, because there was no contrary testimony regarding the identification, admission of the police report in addition to Perente's testimony would have been cumulative. Trial counsel subsequently utilized this testimony on summation, arguing that although Moriah faced his assailant for five minutes, he did not tell Police Officer Perente that Mr. Bell was the assailant, but rather described him as a male black with a lemon yellow shirt. Tr. at 904-06. He stressed this detail multiple times on summation, stating "if it was Bell, why didn't you say so?" Tr. at

906.[5] Counsel was effective in eliciting this identification through Officer Perente's testimony and used it to challenge the reliability of petitioner's subsequent identification of Bell.

## C. Failure to Object to Introduction of Prejudicial Evidence

Petitioner next alleges that his attorney's failure to object to the introduction of inadmissible, highly prejudicial, and non-probative evidence constituted ineffective assistance. "Where . . . petitioner's claim rests in part upon the failure to object to the admission of evidence, it is necessary to determine whether the evidence was so damaging that counsel's failure to object deprived petitioner of the 'reasonably effective assistance to which he is entitled." Quartararo v. Fogg, 679 F.Supp.212, 240 (E.D.N.Y. 1988). Not all such failures by trial counsel are sufficiently prejudicial to lead to a finding of ineffective assistance of counsel; "[i]n determining the existence of vel non prejudice, the court must consider the totality of the evidence before the judge or jury." Kemmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 446 U.S. at 695). A finding of ineffective assistance of counsel does not, however, require that the evidence admitted due to trial counsel's failure be central to the prosecution's case. While evidence admitted due to counsel's failures to object "may not have been as important as other components of the State's case, it may have tipped the balance." Kimmelman, 477 U.S. at 390.

---

[5]In arguing that trial counsel was ineffective for failing to introduce the police report, petitioner seems to ignore the testimony of Officer Perente regarding the identification. Insofar as he argues, however, that "such evidence could only be effective if it were introduced during the cross-examination of Mr. Moriah," Pet. Reply at 21, the court disagrees, and, at a minimum, it was a tactical decision well within counsel's discretion. It was at least, if not more powerful, to elicit the identification directly from Officer Perente than it would have been to introduce the police report. Moreover, there was no basis for the introduction of the police report during the examination of Mr. Moriah.

Petitioner alleges that trial counsel "failed to recognize that Mr. Edmonds' testimony about petitioner's purportedly bad character acts should not have been introduced into evidence," because "[such evidence was unduly prejudicial." Pet. Mem. at 64. Petitioner's claim is without merit. The challenged testimony – testimony by petitioner's landlord, Mr. Edmonds, regarding their rocky relationship – was not introduced to show petitioner's propensity to commit robbery. The testimony did not recount criminal, immoral, or vicious conduct by petitioner. In fact, Edmonds' testimony was properly admitted in order to provide a motive for the crime. Any objection to this evidence by trial counsel would therefore have been unsuccessful, and petitioner has not established prejudice as a result of his counsel's failure to object to Edmonds' testimony.

In her opening statement, the prosecutor told the jury that Bell was no longer living in Edmonds' building because he had been kicked out for failing to pay his rent. She further stated that "not only was he kicked out of there, the locks were changed, and . . . the landlord and Brenton [Moriah] himself, the victim, . . . had assisted in removing [Bell's] clothing and property and placed it outisde." Tr. at 187. Edmonds later testified that he repeatedly attempted to evict petitioner for nonpayment of rent. On multiple occasions, because petitioner would not leave the premises, Edmonds placed locks on petitioner's interior door and the front door of the building. See Trial Tr. at 216-22. Petitioner consistently regained admission either with Edmonds' permission or by breaking the locks. Id. Edmonds testified that on one occasion when he confronted petitioner about a broken lock, petitioner "seemed angry." Id. at 219. Subsequently, after Edmonds placed another lock on the building's door, petitioner was "very angry" and took police officers to the building to gain access. Id. at 222-23. Petitioner finally moved out of the building when someone placed his belongings outside the building. Id. at 225. Edmonds

testified that petitioner was angry and agitated when he confronted Edmonds about removal of his property. Id. at 226.

Petitioner's relationship with Brenton Moriah was generally less hostile than his relationship with Edmonds. Petitioner and Moriah lived on the same floor of Edmonds' rooming house for over a year, and both petitioner and Moriah testified that they had no relationship, good or bad. Trial Tr. at 208-09, 370-78, 398, 406-09, 770, 786-88. Petitioner testified, however, that he believed that Moriah was related to Edmonds. Id. at 800.

That Edmonds' testimony was elicited to establish a motive for petitioner's crime is evident. In her opening statement, the prosecutor stated that petitioner was "pissed off" because he had been evicted and locked out of the rooming house and because his possessions had been moved from his room. Id. at 186-87. She also alleged that Moriah assisted Edmonds in removing Bell's belongings from his apartment. Id. at 187. Bell later testified that he believed Moriah to be related to Edmonds. On summation, the prosecutor argued that petitioner's "landlord situation" was the motive for petitioner's crimes and the source of petitioner's anger. Id. at 931-32, 940-41.

Edmonds' testimony was therefore properly admitted into evidence to prove motive, and any objection by trial counsel would have been unsuccessful. A failure to raise an evidentiary objection cannot constitute ineffective assistance if the objection lacks merit. See Dowtin v. Cohen, Nos. 99 Civ. 0323, 03 Misc. 0066, 2005 WL 697981, at *26 (E.D.N.Y. Mar. 25, 2005) (collecting cases). Since petitioner has not established that Edmonds' testimony was objectionable, this court cannot find that trial counsel's failure to object constituted ineffective

assistance of counsel. Accordingly, the court cannot deem the state court's denial of this claim on direct appeal an "unreasonable application" of clearly established Supreme Court law.

### D. Failure to Exercise Peremptory Strike

Petitioner next claims that defense counsel, by failing to timely exercise a peremptory strike, denied the petitioner his right to be tried by a jury of his choosing. Pet. Mem. at 67. Trial counsel conceded in state proceedings that he made a clerical error during the second round of jury selection, which resulted in the failure to timely exercise a peremptory challenge against a juror. However, a mere clerical error by counsel, without more, does not constitute deficient performance. Furthermore, petitioner has failed to demonstrate that the court's denial of counsel's belated challenge resulted in prejudice to him. See Schreter v. Artuz, 225 F.Supp.2d 249, 257 (E.D.N.Y. 2002) (to establish ineffective assistance of counsel during jury selection, defendant must establish that but for counsel's performance during jury selection the outcome of the trial would have been different).

### E. Failure to Make Adequate Motion to Dismiss Robbery Charge

Next, petitioner claims that trial counsel was ineffective because he failed to make an adequate motion to dismiss the robbery count. Petitioner maintains that counsel's failure prevented the trial court from understanding the alleged legal insufficiency of the People's evidence on the robbery point. However, as discussed at Point 3, below, the evidence was legally sufficient to support petitioner's robbery conviction. Therefore, petitioner suffered no prejudice due to counsel's failure to make a motion to dismiss on these grounds. The court also notes that the Appellate Division did not find petitioner's legal sufficiency claim unpreserved as a result of

his attorney's failure to object, but reviewed the legal sufficiency claim on the merits. Thus petitioner suffered no prejudice on appeal as a result of the alleged mistake by counsel.

### F.    *Petitioner's Cumulative Ineffective Assistance Claim*

Petitioner alleges that "trial counsel's numerous and egregious deficiencies cumulatively establish that petitioner was denied the effective assistance of counsel." Pet. Reply at 23. Petitioner is correct that a claim of ineffective assistance of counsel can turn on the cumulative effect of all of counsel's alleged actions. Rodriguez v. Hoke, 928 F.2d 534, 538 (2d Cir. 1991). Nevertheless, even considered cumulatively, trial counsel's actions did not constitute ineffective assistance of counsel.

First, the court notes that, contrary to petitioner's argument, the 440 court had the opportunity to consider all four of petitioner's ineffective assistance of counsel claims, and had before it argument by petitioner that trial counsel's cumulative conduct constituted ineffective assistance. Nevertheless, assuming arguendo, that petitioner's cumulative claim is entitled to de novo review, the claim fails. For all of the reasons discussed above, none of petitioner's ineffective assistance of counsel claims has any merit. The court cannot say that but for any combination of these alleged errors by trail counsel, the result of the proceeding would have been different. Thus, petitioner's claim fails under Strickland. Accordingly, the court cannot find that the state court's denial of petitioner's claims constituted an unreasonable application of federal law.

### 3.    Petitioner's Sufficiency of the Evidence Claim

Petitioner finally claims that the evidence was legally insufficient to support his robbery conviction. Petitioner's legal insufficiency claim is without merit. Petitioners challenging the

sufficiency of the evidence face a "very heavy burden." Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995). On federal habeas review, courts must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The court must defer to the jury's "assessments of the weight of the evidence and the credibility of witnesses." Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996). A court may only grant habeas relief if the petitioner has shown that, "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324 (emphasis added).

A person is guilty of Robbery in the First Degree under N.Y. Penal Law § 160.15(1) "when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . is armed with a deadly weapon." Petitioner alleges that the People failed to prove that he "forcibly stole" property. A person "forcibly steals" when, in the course of committing a larceny, that person uses or threatens to use physical force to (i) prevent or overcome resistance to the taking, or retaining, of the property; or (ii) compel the owner of the property to deliver up the property or to engage in conduct which aids in the commission of the larceny. N.Y. Penal Law § 160.00. In turn, Section 155.05 of the Penal Law defines larceny as the wrongful taking, obtaining, or withholding of property with the intent to deprive another person of that property. Thus, to convict a person of robbery, there must be evidence presented that shows that the person "took, obtained, or withheld" property. Petitioner alleges that because there is no evidence that petitioner took,

moved, or touched the address book, petitioner never exercised the required dominion and control over Moriah's property.

Petitioner's claim lacks merit. Petitioner here moved the property in question, albeit through the compelled cooperation of Moriah. Moriah's movement of the address book and money from his pocket to the hood of the parked car solely in response to petitioner's demand at gunpoint demonstrated petitioner's possession and control of the property. Moriah did not voluntarily choose to remove and relinquish his property, but only did so out of fear for his safety. Consequently, it was petitioner, not Moriah, who directed and controlled the property's movement.

Contrary to petitioner's argument, actual physical contact with stolen property is not a required element of larceny. Although in support of his argument, petitioner cites cases in which defendants did, in fact, have physical possession of the property at some point, physical possession is not required. Instead, larceny requires defendant to exercise dominion and control inconsistent with the continued rights of the property owner. The cases cited by petitioner, People v. Olivio, 52 N.Y.2d 309, 319-320 (1981) and People v. Dingle, 122 A.D.2d 280, 281 (2d Dep't 1986), relied upon defendants' exercise of dominion and control, rather than physical possession, of another's property.

Here, the evidence established that petitioner exercised sole dominion and control over Moriah's property inconsistent with Moriah's rights as an owner. Therefore, the evidence was sufficient to convict. In any event, as Officer Kopita testified, neither the book nor the money was found in the investigation of the crime area. Tr. 516-18, 524. Thus the jury had sufficient

circumstantial evidence to conclude that Moriah's address book and money were no longer in the immediate vicinity and that petitioner had taken the property before fleeing.

Having considered the evidence in the light most favorable to the prosecution, the court cannot conclude that no rational trier of fact could have found proof of guilt beyond a reasonable doubt. Accordingly, habeas relief is not warranted on this claim.

## CONCLUSION

For the reasons stated above, the petitioner's motion to amend the caption is granted, the petition for a writ of habeas corpus is denied, and petitioner's motion for release on recognizance or surety pending the disposition of his petition for habeas corpus is denied as moot. Because Bell has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2) (1996), no certificate of appealability will be granted. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: August 12, 2005
      Brooklyn, New York

SERVICE LIST:

*Attorney for Petitioner*

Anne S. Raish
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Lisa M. Shalov
Stillman v. Fridman, P.C.
425 Park Avenue
New York, New York 10022

*Attorney for the Respondent*

Howard B. Goodman
Assistant District Attorney
Office of the Kings County District Attorney
350 Jay Street
Brooklyn, New York 11201